RECEIPT #
AMOUNT $ _150_
SUMMONS ISSUED _1_

ORM _
BUE
Y. CLK
1-23-04

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| |
|---|
| APRIL ADJEI,<br>        Plaintiff,<br><br>v.<br><br>CORNU MANAGEMENT,<br>        Defendant. |

Docket No.

# 04 CV 1 0 1 6 3 WGY

**COMPLAINT**     MAGISTRATE JUDGE _Cohen_

1.      This is a complaint brought to redress discrimination in employment on the basis of race, color and sex in violation of 42 U.S.C. §2000e et seq. and Massachusetts G.L. c. 151B. Plaintiff seeks compensatory damages, punitive damages, and costs including reasonable attorney's fees.

## PARTIES

2.      At the time of the incidents which are the basis of this action, Plaintiff April Adjei is an African-American (non-Hispanic) female resident of Suffolk County, Massachusetts.

3.      The Defendant Cornu Management is a corporation with a usual place of business in Boston, Suffolk County, Massachusetts. At all times relevant hereto, Defendant Cornu Management had more than 20 employees.

**JURISDICTION**

7.      This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §§1331, 1343 and 42 U.S.C. §2000e-2. This Court has jurisdiction over Plaintiff's claims under state law by virtue of its supplemental jurisdiction as stated in 28 U.S.C. §1367.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8.      On or about February 8, 2000, Plaintiff filed a Charge of Discrimination against the Defendant with the Massachusetts Commission Against Discrimination ("MCAD"). Said charge was automatically cross-filed with the Equal Employment Opportunity Commission of the United States (EEOC).

**FACTS**

9.      Ms. Adjei was hired by Cornu Management only to be stereotyped, disrespected, marginalized, threatened, undermined, and eventually driven out by the racial and gender discrimination of Cornu Management and its employees.

10.     Plaintiff April Adjei, a manager with 17 years of facility management experience, began working for Cornu Management ("Cornu") in October of 1999 as Assistant Property Manager for Facilities.

11.     During her term of employment at Cornu Management, Plaintiff was subjected to harassment and unequal working terms and conditions as compared to her white male co-

workers.

12.    On several occasions during her employment, Plaintiff was harassed and belittled by the racist comments and attitude of her immediate subordinate, Robert Ployer. Specifically, these incidents included:

    a.  Racially insensitive and inappropriate statements on multiple occasions. These statements included "I'm not taking any order from any nigger bitches, least of all you," "Ike Turner really knew how to treat a black woman right," "April, do you think there are as many blacks in Roslindale as there are in Roxbury?" "April, do you think blacks are following Jews and moving from Hyde Park and Roslindale into West Roxbury? Would you like to live in West Roxbury?"

    b.  Within hearing of Ms. Adjei, Mr. Ployer had a conversation Irma Diaz, an Hispanic female employee of the facilities department. Mr. Ployer told Ms. Diaz that she should be out "getting a green card" instead of eating lunch. Ms. Diaz stated that she did not need a green card, as she was Puerto Rican, and "maybe you [Mr. Ployer] should get one." Mr. Ployer then pointed to his face and stated "because I got this skin I don't need no f---ing green card, baby."

    c.  When Ms. Adjei attempted to implement a new customer service plan for the facilities management department, Mr. Ployer opposed it. He stated to Ms. Adjei that she was wasting her time trying to improve the professional attitude of people who could not read, write or even speak English.

3

13. On several occasions during her employment, Plaintiff was made to feel threatened and undermined by Robert Ployer. Mr. Ployer repeatedly interfered in Ms. Adjei's duties, and refused to make any account of his actions to her as his superior. When Ms. Adjei confronted him on this behavior, Mr. Ployer repeatedly responded in a threatening manner. Specifically these incidents included:

a. On December 2, 1999, while instructing a groundsman to carry out a work assignment, Ms. Adjei was interrupted by Mr. Ployer, who tried to assert his authority in place of Ms. Adjei's. When Ms. Adjei resisted this, Mr. Ployer spoke to her in threatening manner, stormed out of her office and slammed the door.

b. Mr. Ployer continually represented himself as the sole authority over the employees of the facilities management department, despite his subordination to Ms. Adjei, stating to Ms. Adjei that he held the balance of the employees' lives in his hands. Ms. Adjei replied that his comments were disgusting and that he needed to change his attitude, to which Mr. Ployer replied that "these savages are getting the best they can."

c. Mr. Ployer continually represented that the financial accounts and books of the department were his sole responsibility, despite Ms. Adjei's superior position within the department. When Ms. Adjei asked

4

him to turn over the books and financial documents, Mr. Ployer refused, stating that he would prepare any reports or summaries that she needed. When pressed by Ms. Adjei, Mr. Ployer replied "Why don't you just play ball, April?"

    d.  During a conference between Ms. Adjei and Mr. Ployer regarding financial issues at Cornu Management, Mr. Ployer showed Ms. Adjei a gun. He also opened his shirt to reveal a bulletproof vest and a badge. He stated that he was an undercover police officer who had been on a drug stake out on the street where Ms. Adjei lived. He went on to convincingly describe Ms. Adjei's street and residence in detail.

    e.  On several occasions following the above incident Mr. Ployer pantomimed pulling a gun and shooting Ms. Adjei.

    f.  On December 7, 1999, Mr. Ployer stated that he could not wait to be in a firefight. When Ms. Adjei informed him that he was scaring her, he laughed and walked out of the office.

14.    As the difficulties between Ms. Adjei and Mr. Ployer increased, Mr. Ployer took action to directly undermine Ms. Adjei's authority. He impeded the progress of work orders within the department so as to make it appear that the department was functioning badly. He also spoke directly to vendors for the department and informed them not to deal with Ms. Adjei.

15.    While employed at Cornu Management, Ms. Adjei discovered an employee

organizational flowchart prepared by the previous Assistant Property Manager for Facilities

Management, Patricia Jane-Sommer, whose promotion to Vice President opened the vacancy

which Ms. Adjei was hired to fill. This flowchart indicated the race and gender of each

employee, clearly indicating the racially profiled nature of the department and the company.

16.    Ms. Adjei repeatedly complained of these incidents to Mr. Ted Bourdon, her

supervisor. However, no action was taken by the company, and the incidents were not

stopped.

17.    Mr. Ployer repeatedly complained to Mr. Bourdon of Ms. Adjei's requests for

the financial documents of the department and of the slowing of work orders that his own

interference had caused. These allegations were the direct cause of Ms. Adjei's termination,

but no investigation of them was ever performed.

17.    On January 11, 2000, Ms. Adjei was presented with a resignation letter by Mr.

Bourdon and asked to sign it. She refused. She was terminated that same day.

18.    On information and belief, after Ms. Adjei's termination, a Caucasian woman

was hired to replace her. This replacement quickly was allowed to implement certain

department-wide policies that Ms. Adjei had attempted to implement, but was prevented by

Mr. Ployer.

## COUNT I
### DISCRIMINATION IN VIOLATION OF 42 U.S.C. §2000e et seq.

19.     Plaintiff repeats the allegations contained in paragraphs 1 through 18 above and incorporates those paragraphs herein by reference.

20.     Defendant has unlawfully discriminated against Plaintiff on the basis of race, color and gender in violation of 42 U.S.C. §2000e et seq.

21.     Defendant engaged in said discriminatory conduct with malice and/or reckless indifference to Ms. Adjei's rights under federal and state law.

22.     As a result of the race, color and gender discrimination she experienced at Cornu Management, Plaintiff has been damaged professionally and personally, has incurred financial losses, emotional distress, damage to reputation and lost professional opportunities.

## COUNT II
### DISCRIMINATION IN VIOLATION OF MASSACHUSETTS G.L. C. 151B

23.     Plaintiff repeats the allegations contained in paragraphs 1 through 18 above and incorporates those paragraphs herein by reference.

24.     Defendant Cornu Management has unlawfully discriminated against Plaintiff on the basis of race, color and gender in violation of Massachusetts G.L. c. 151B.

45.     Defendant engaged in said discriminatory conduct with malice and/or reckless indifference to Ms. Adjei's rights under state and federal law.

46. As a result of the race, color and gender discrimination she experienced at Cornu Management, Ms. Adjei has been damaged professionally and personally, has incurred financial losses, emotional distress, damage to reputation and lost professional opportunities

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Award Plaintiff compensatory damages for back pay and benefits, re-instatement, front pay and benefits, emotional distress and damage to her reputation;

(2) Award Plaintiff punitive damages;

(3) Award Plaintiff reasonable costs and attorneys' fees;

(4) Grant such other relief as the Court deems just including prejudgment; and

(5) post-judgment interest.

## JURY DEMAND

Plaintiff claims her trial by jury on all claims so triable.

Respectfully submitted,

Plaintiff April Adjei,
By her attorney,

Floyd H. Anderson (BBO#018240)
Law Offices of Floyd H. Anderson, P.C.
170 Milk Street
Boston, MA 02109
(617)542-9910